**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NORMAN ALLEN, #213108,

        Petitioner,

                                 Civil No: 2:07-CV-15481
                                 Honorable Gerald E. Rosen
                                 Magistrate Judge Steven D. Pepe

v.

SHIRLEE A. HARRY,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS**
**CORPUS, DENYING CERTIFICATE OF APPEALABILITY AND**
**DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner, Norman Allen, is a state inmate currently incarcerated at Muskegon

Correctional Facility in Muskegon, Michigan. Petitioner was convicted at the conclusion of

a Wayne County Circuit Court bench trial of second-degree murder, Mich. Comp. Laws

§750.317; felon in possession of a firearm, Mich. Comp. Laws §750.224f; and possession

of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. Petitioner

was sentenced as an habitual offender, second offense, Mich. Comp. Laws §769.10, to

prison terms of twenty-four to forty-five years for the second-degree murder conviction, two

to five years for the felon in possession of a firearm conviction, and a mandatory two-year

consecutive term for the felony-firearm conviction. Petitioner has filed a *pro se* petition for

writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will

deny the petition.

# I. BACKGROUND

Petitioner's conviction arises from the fatal shooting of Joe Louis Swanigun. Petitioner gave a statement to the police following the shooting; and he testified at trial stating that he did not shoot Mr. Swanigun. He testified that he was nearby selling drugs and heard the gun shots. However, he denied any involvement in Mr. Swanigun's death. Some witnesses testified that Petitioner had a gun prior to Mr. Swanigun being shot and that Petitioner was firing the weapon. Another witness believed he heard Petitioner's voice as Mr. Swanigun was being shot. Several witnesses heard gun shots. However, no witness actually saw Petitioner shoot Mr. Swanigun. Mr. Swanigun died of a single gun shot wound to the back. Petitioner was convicted of Mr. Swanigun's murder following a bench trial.

Petitioner filed an appeal of right and raised the following issues:

I. Defendant was denied due process by the government's intimidation of several star prosecution witnesses, which resulted in their making incriminating statements which were not true but which the prosecutor used at trial; the prosecutor denied defendant fair trial by calling at least one of these witnesses in order to introduce the prior statement. U.S. Const Am IV; Mich Const 1963 Art I Sec 17.

II. The trial court erred and denied defendant a fair trial and his right to present a defense by refusing to admit a letter written by defendant several months before trial, offered as a prior consistent statement to rebut the prosecutor's allegation of recent fabrication. US Const Am XIV; Mich Const Art I, Sec 17.

III. The prosecutor erred reversibly in injecting evidence that defendant had exercised his post-arrest and post- *Miranda* right to remain silent. US Const Am V; XIV; Mich Const Art I, Sec 17, 20.

Petitioner subsequently filed a motion for remand which was denied. *People v. Allen,* No.

233206 (Mich. Ct. App. June 3, 2002). The Michigan Court of Appeals affirmed Petitioner's

conviction and sentence. *People v. Allen,* No. 233206, 2002 WL 31934025 (Mich. Ct. App.

Nov. 19, 2002).

Petitioner then filed an application for leave to appeal with the Michigan Supreme

Court raising the same claims presented to the Michigan Court of Appeals with the addition

of the following new claim:

> I. Defendant was denied his right to [a] trial by jury where defendant's jury
> trial waiver was induced by [a] promise that present[s] such [a] statement as
> a false exculpatory statement showing consciousness of guilt. US Const
> Amend VI; Mich Const 1963, Art I, Sec 20.

Petitioner's application for leave to appeal was denied. *People v. Allen,* 468 Mich. 915; 662

NW2d 750 (2003).

Petitioner then filed a motion for relief from judgment with the Wayne County Circuit

Court raising issues of prosecutorial misconduct, ineffective assistance of trial counsel, and

ineffective assistance of appellate counsel. The motion was denied on January 31, 2006.

Petitioner appealed the trial court's decision in an application for leave to appeal with the

Michigan Court of Appeals raising the following issues:

> I. Norman Allen was denied due process of law and a fair trial where the prosecutor
> elicited comments from him on the credibility of witnesses and failed to list res
> gestae witnesses. US Const Ams 5 & 14; Mich Const Art 1 §§17 & 20.
>
> II. Norman Allen was denied his right to the effective assistance of trial counsel by
> counsel's failure to investigate and call witnesses or object to trial errors. US Const
> Amd 6, MI Const Art 1 & 20.
>
> III. Norman Allen was denied the effective assistance of (appellate) counsel, where
> counsel failed to raise ineffective assistance of trial counsel and prosecutorial
> misconduct. US Const Ams 5, 6 & 14; MI Const Art 1, §§17 & 20.

Relief was denied. *People v. Allen,* No: 273478 (Mich. Ct. App. April 27, 2007). Petitioner

filed an application for leave to appeal with the Michigan Supreme Court which was also

denied. *People v. Allen,* 480 Mich. 859; 737 NW2d 752 (2007).

Petitioner now seeks to file a writ of habeas corpus raising the following claims:

I. The outrageous actions of the police and repeated misconduct of the prosecution so infected Petitioner's trial with unfair prejudice as to deny him due process and a fair trial. US Const 5, 6, & 14.

II. The trial court erred and denied Petitioner his fundamental due process right to present a[ny] evidence in his own defense. US Const Amd 14.

III. Petitioner Allen was denied his right to the effective assistance of trial counsel where counsel failed to investigate and call witnesses or object to prosecutorial misconduct. (US Const Amd 6).

IV. Petitioner Allen was denied his Sixth Amendment right to the effective assistance of (appellate) counsel. (US Const Amd 6).

Respondent has filed an answer to the petition asserting that habeas relief is not warranted

in this case.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case,

"circumscribe[d]" the standard of review federal courts must apply when considering

applications for a writ of habeas corpus raising constitutional claims, including claims of

ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

4

unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous"). The Supreme Court explained the proper application of the "contrary to" clause:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established

precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III. DISCUSSION

### A. Procedural Default

Respondent asserts that  Petitioner's prosecutorial misconduct and ineffective assistance of trial counsel claims are procedurally defaulted. The Court agrees.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner's prosecutorial misconduct claim is procedurally defaulted due to his failure to place a contemporaneous objection on the record at trial. The United States Supreme Court has recognized that the failure to contemporaneously object is generally a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Coleman,* 501 U.S. at 750-51. The fact that the state appellate court may have examined whether the alleged misconduct resulted in "plain error" does not affect the preclusive effect of the procedural bar.[1] See *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).

Petitioner's ineffective assistance of trial counsel claim was raised for the first time in his motion for relief from judgment. The trial court denied relief pursuant to Michigan Court Rule 6.508(D)(3). The court concluded that Petitioner did not establish cause and prejudice for previously failing to raise the challenges to his conviction. The Michigan appellate courts also relied upon Michigan Court Rule 6.508(D) in denying Petitioner leave to appeal the denial of his motion for relief from judgment. The Michigan courts thus "clearly and expressly" relied upon a state procedural rule in dismissing his claims. On collateral review in the Michigan courts, Petitioner also alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. If Petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See*

_____

[1] The Michigan Court of Appeals evaluated Petitioner's prosecutorial misconduct claim for plain error.

7

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that his appellate counsel was ineffective, a petitioner must show *inter alia* that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

Given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claims, the Court concludes that it would be most efficient to simply consider the merits of Petitioner's procedurally defaulted claims.

## B. Witness Intimidation by Law Enforcement & Prosecutorial Misconduct

Petitioner asserts that his due process rights were violated because certain witnesses (i.e., Kenyatta Morrow, Gregory Patrick, Rosie Walker, and Sallie Jackson ) were mistreated during their interrogation by the police and intimidated into making incriminating statements, which were wrongfully used against him at trial by the prosecutor. The Michigan Court of Appeals addressed this issue and rejected Petitioner's argument as follows:

> It is improper for a prosecutor or police to intimidate witnesses in or out of court. Here, the record reveals that while the police were interrogating a witness they "hollered" in her face and threatened to send her to a juvenile detention center if she did not talk. Another witness testified that she was slapped twice and that the police officers treated her very harshly and called her a "lying bi***." Another witness testified that the police bent his fingers back and pushed on the pressure points behind his ears to get him to talk to the police.

> We clearly do not condone the way the witnesses were treated. However, defendant has failed to establish how the outcome of the proceedings was prejudiced by the way the witnesses were treated. One of the witnesses signed a statement at the police station stating that defendant was renting out the basement of her house and selling drugs, and testified that defendant was renting the basement of her house and selling drugs. The witness also testified that, on the evening in question, she was sitting in the dining room listening to music when she saw defendant walk downstairs and then come back upstairs and walk toward the

front door.  She then heard gunshots and ran upstairs and lay on the floor.  Another of the witnesses testified that, on the evening in question, she was at the house on Lothrop Street when she witnessed a scuffle ensue between two persons and then heard another individual shout, "go get the gun." The witnesses testified that defendant hesitated, went inside the house, and approximately five minutes later came out of the house with a gun and fired it in the air twice.  The witness then ran and hid on the side of the house, and heard three more gunshots coming form the house.  The third witness gave a three-page statement at the police station; but testified that she did not say any of the information contained in the statement and she just felt threatened.[2]  However, all three of these witnesses were able to take the stand and testify to their version of the events that occurred the evening in question. The record does not indicate that any of the witnesses seemed hesitant at trial to testify.  Credibility of the witnesses is a matter for the trier of fact to ascertain.

Moreover, other evidence corroborated the testimony of the witnesses.  Defendant admitted to renting the basement and selling drugs out of the house.  Two police officers found an empty Winchester .30 carbine box and suspected crack cocaine in the basement of the house.  Additionally, two officers observed five spent .30 caliber shell casings on the front porch, and a lab report determined that all five spent shell casings were fired from the same weapon.  Another witness testified that he saw defendant come out of the house with a rifle.  Perry heard the victim say, "look man, all I - all we wanted was my man's key back," and then heard a voice that sounded like defendant's voice answer twice, "That's all you want?"  The witness then heard three more gunshots come from the house and further testified that the gunshots he heard sounded like the gun shots that defendant fired in the air.  Moreover, the witness picked defendant out of a photographic line-up at the police station as the shooter.

*Allen,* 2002 WL 31934025, *1 - 2 (internal citations omitted).

While the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf, use of another's coerced testimony may violate a defendant's rights under the Due Process Clause. *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), *aff'g* 354 F. Supp. 1331 (E. D. Mich. 1972). The Eleventh Circuit Court

---

[2]  "Defendant never charged any inappropriate treatment.  Defendant told that trial court that he was read his constitutional rights, was never deprived of any food, sleep, or medical attention, and was not physically abused in any way or threatened with abuse." *Allen*, 2002 WL 31934025 *1, n.1.

of Appeals has held that, even where police conduct in questioning a witness is inappropriate, if the conduct is "not so extreme that it violates a sense of fundamental fairness, shocking to universal justice," a defendant's due process rights are not violated where the defendant is able to cross-examine the witness regarding the police contact. *Wilcox v. Ford*, 813 F.2d 1140, 1149 (11th Cir. 1987) (internal quotation omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." *Id.* at 1149. The Court finds the Eleventh Circuit's reasoning persuasive.

In this case, defense counsel was able to cross-examine witnesses regarding their alleged treatment by police. As the Michigan Court of Appeals held, the trial court, therefore, was able to assess their credibility and the potential impact the police conduct may have had on their testimony. Thus, the introduction of testimony from Kenyatta Morrow, Gregory Patrick, Rosie Walker, and Sallie Jackson did not violate Petitioner's constitutional rights. Consequently, the prosecutor did not engage in any misconduct by using these witnesses in an effort to secure a conviction against Petitioner in this case.

### C. Presenting A Complete Defense

Petitioner next claims that the trial court erred when it precluded him from introducing evidence of a prior consistent statement in the form of a letter written by Petitioner to his defense counsel. Petitioner argued that because the prosecutor claimed that Petitioner recently fabricated his trial testimony, the letter, which was written two months after Mr. Swanigun's death, served to bolster his credibility. This claim is nothing more than a reprise of Petitioner's state law evidentiary issue which he advanced without success on his direct appeal. The Michigan Court of Appeals rejected this contention

10

finding that these prior consistent statements were inadmissible to rebut an alleged express or implied charge of recent fabrication or motive and was expressed as follows:

> As a general rule, neither party in a criminal trial is permitted to bolster a witness' testimony by seeking admission of a prior consistent statement made by that witness. While there are exceptions to this rule, such as to rebut a charge of recent fabrication, the exceptions only apply if the earlier consistent statement was given at a time prior to the existence of any fact which would motivate bias, interest, or corruption on the part of the witness. The letter that defendant wrote defense counsel on May 19, 2000, was written after defendant was arrested on April 21, 2000. The crime occurred on March 23, 2000. Therefore, two months passed between the crime and the letter that defendant wrote while imprisoned. Clearly, the fact that defendant was arrested for the crime of murder would motivate bias, interest, or corruption on his part. Therefore, the letter was clearly inadmissible and the trial court did not abuse its discretion in excluding this evidence.

*Allen,* 2002 WL 31934025, *2 (citations and internal quotation marks omitted).

"While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain factors such as unfair prejudice, confusion, of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006). Even when a court erroneously excludes defense evidence, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell,* 459 F.3d 739, 753 (6th Cir. 2006) (alterations in original).

The right of an accused to present a defense has long been recognized as a "fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967).

However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer,* 523 U.S. 303, 308 91998). Indeed, "[a] defendant's interest in presenting . . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted).

In this case, Petitioner seeks to introduce his own prior consistent statement which was made after his arrest.[3] Petitioner has not only failed to demonstrate that his constitutional rights have been denied as a result of the omission of this evidence, but Petitioner has also failed to show that his evidence is accurate. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir. 1994); see also *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (holding that it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). The Sixth Circuit Court of Appeals has explained that:

> Errors in the application of state law, especially ruling regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.

*Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless the "offend[ ] some principle

---

[3] The Court acknowledges that a motive to fabricate does not *always* arise when a witness is arrested and/or agrees to a plea agreement. *See United States v. LeBlanc*, 612 F.2d 1012, 1017 (6th Cir. 1980) (statements made by defendant's confederate before agreeing to give testimony implicating defendant in bank robberies in return for a release of his brother and other considerations "would be admissible as prior consistent statements which predated the plea bargain agreement."); *United States v. Kahn*, 821 F.2d 90, 94 (2nd Cir. 1987) (court was "unpersuaded that the witness had a motive to lie about defendant's involvement in a drug deal when he made the prior consistent statement at the time when he was arrested.").

of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996) quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977). Even if some rule of evidence were violated, relief on collateral review will be provided "only when a trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Ford v. Curtis,* 277 F.3d 806, 809 (6th Cir. 2002) citing *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

The state court of appeals in this case determined that no evidentiary rule was violated by the exclusion of the letter. Therefore, this Court does not conclude that the state court's finding of no error was contrary to or an unreasonable application of federal law as determined by the Supreme Court. Moreover, even improperly excluded evidence will not render a trial fundamentally unfair if there was overwhelming evidence of the petitioner's guilt, thereby rending the exclusion harmless. Habeas relief is, therefore, not warranted relative to this claim.

### D. Ineffective Assistance of Trial & Appellate Counsel

#### 1. Trial Counsel

Petitioner argues that defense counsel was ineffective for: (1) failing to call Kenneth and Alma Morrow as witnesses during trial, who would have testified that Petitioner was in the house at the time of the shooting and he could not have shot Mr. Swanigan; (2) failing to investigate Petitioner's theory that another individual was responsible for the committing the murder and that another individual was shot; (3) failing to object to prosecutorial misconduct involving the intimidation of certain witnesses; and (4) failing to call two police officers as witnesses at trial who would have produced investigative

documentation showing that more than one individual was shot on the evening in question.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, he must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). First, the petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996). Under *Strickland,* a court must presume that decisions by counsel as to whether

to call or question witnesses are matters of trial strategy. See *Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

As set forth above, Petitioner lists several omissions, failures and alleged deficiencies in trial counsel's legal representation. However, aside from listing these claims, Petitioner fails to show that counsel's alleged errors were so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. Petitioner further fails to demonstrate how counsel's alleged deficient performance prejudiced his defense to the point of not receiving a fair trial.

First, Petitioner claims that trial counsel failed to call Kenneth Morrow, Alma Morrow, or Juantissa Hill as witnesses during trial. He also argues that defense counsel failed to call two police officers as witnesses at trial who would have produced investigative documentation showing that more than one individual was shot on the evening in question.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have

15

incriminated defendant within scope of informed professional judgment).

Kenneth Morrow, Alma Morrow, and Juantissa Hill each prepared affidavits which state that Petitioner did not commit the crimes with which he was charged. (Pet., App. C, ¶7). However, each of these affidavits also state that defense counsel came to each of their homes to discuss Petitioner's case. *Id.* at ¶6. Therefore, defense counsel located these witnesses, spoke with them about the case, and based upon his conversation with these witnesses decided not to call them to testify on behalf of the defense. Defense counsel's decision was one of trial strategy that this Court will not second guess.

Regarding the two police officers, although the record reflects that defense counsel subpoenaed Officer Alfred Thomas and Inspector Rice and encountered some challenges securing their appearances at trial, Officer Thomas ultimately testified as a defense witness and trial counsel had the opportunity to question him regarding the circumstances surrounding Mr. Swanigun's death. (Tr. Vol. III, 1/18/01, pp. 23-27). As for Inspector Rice's testimony, defense counsel stated on the record as follows:

> . . . I did go to the Homicide Section yesterday afternoon with the officer in charge of this case, Sergeant Jennings. I did have an opportunity to review the records, which I had hoped Inspector Rice would produce, and I am satisfied with my review of those records, and I am not offering them in evidence at this time. I do think that the – – then that the argument I was making - - the objection I was lodging yesterday [w]as mooted by the resources that have been made available to me through the officers of the court and the police department.

*Id.* at 28. Therefore, the trial court was presented with Officer Thomas' testimony and defense counsel demonstrated diligent efforts in obtaining access to the information he was unable to elicit from Inspector Rice.

Consequently, Petitioner has failed to demonstrate how defense counsel's

performance was deficient by the non-appearance of the above referenced witnesses. More importantly, Petitioner cannot show how he suffered any prejudice as a result of witnesses not being called to testify.

Second, Petitioner argues that defense counsel's representation was ineffective due to his failure to object to the prosecutor's use of witnesses who were allegedly intimidated by law enforcement officials. As addressed above, the Court finds that the prosecutor did not engage in any misconduct relative to these witnesses. Therefore, defense counsel's failure to place an objection on the record regarding this issue was not improper.

Finally, Petitioner asserts that trial counsel failed to investigate alternative theories and scenarios (i.e., another shooter, another victim). *Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. at 691. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up . . . " *Rompilla v. Beard,* 545 U.S. 374, 383 (2005). Attorneys do however, have a duty to make all reasonable efforts to learn what they can about a case. See *Id.* at 385. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his [or her] options and make a reasonable choice between them.'" *Id.* quoting *Horton v. Zant,* 941 F.2d 1449, 1462 (11 Cir. 1991). Stated differently, "[i]t is not reasonable to refuse to investigate when their investigator does not know the relevant facts the investigation will

uncover." *Dickerson v. Bagley,* 453 F.3d 690, 696 (6th Cir. 2006).  Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable.  *Wiggins v. Smith*, 539 U.S. 510, 526 (2003); *Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell,* 303 F.3d 720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been helpful -  only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell,* 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, C.J., concurring).

This argument is speculative at best.  First, Petitioner has not demonstrated that his trial counsel did not employ the investigative strategies that Petitioner urges should have been undertaken.  Second, Petitioner testified in his own behalf and made it clear throughout his testimony to the trial judge that he did not shoot Mr. Swanigun.  (Tr. Vol. II, 1/17/01, pp. 169-197).  He further testified about all of the individuals who were on the scene at the time of the incident and their relationships in an effort to implicate another individual for the shooting. *Id.*  Therefore, the trial court  was aware of alternative theories as presented by Petitioner during his testimony.  Trial counsel's alleged failure to investigate alternative theories of the crime would not have necessarily yielded relevant or material evidence and would have been cumulative at best .

Accordingly, Petitioner has failed to show that he received ineffective assistance

of trial counsel.  Thus, habeas relief is not warranted.

.                                    **2.  Appellate Counsel**

Although the Sixth Amendment  right to counsel does not require an appellate attorney to raise every non-frivolous issue on appeal, an attorney who has presented strong but unsuccessful claims on appeal may nonetheless deliver a deficient performance by omitting  an issue (i.e., dead-bang winner) that obviously would have resulted in reversal on appeal.  See *Meade v. Lavigne,* 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).  In order for Petitioner to prevail on his ineffective assistance of appellate counsel claim, he must show that the purported issues for appellate review are meritorious.   To show prejudice in the context of an appellate counsel claim, Petitioner must show that his  claim would have succeeded on appeal.  See *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.  See *Jones v. Barnes,* 463 U.S. 745, 754 (1983).  The *Jones* Court explained:

> For judges to second-guess reasonable professional judgments and impose an appointed counsel a duty to raise every "colorable" claim suggested by a client would dis-serve the   . . .  goal of vigorous and effective advocacy . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.*  at 754.

Based upon the analysis set forth above, Petitioner's purported issues for appellate review are not meritorious.  Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

## E.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[4]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.  The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong.  The Court thus declines to issue Petitioner a certificate of appealability.

Finally, the Court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal of the Court's decision would be frivolous.  *See* Fed. R. App. P. 24(a).  Accordingly, the Court will also deny leave to

---

[4]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.

proceed on appeal *in forma pauperis.*

## IV.  CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.  Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue a certificate of appealability.

IT IS FURTHER ORDERED that any application for leave to appeal *in forma pauperis* is DENIED.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  February 10, 2010

### CERTIFICATE OF SERVICE

I hereby certify that on ____February 10, 2010____, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: ____Raina I. Korbakis_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:
 Norman Allen, #213108, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(313) 234-5137